IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 1:25-cr-01770-MLG-1

TEVIN KING,

    Defendant.

**MEMORANDUM OPINION AND ORDER CONTINUING TRIAL AND PRETRIAL DEADLINES AND DENYING DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY SUPPRESS**

In August 2024, federal officers pursued Defendant Tevin King in a high-speed chase. Doc. 22 at 1 (citing Amended Violation Rep., *United States v. King*, No. 21-cr-00268 (D.N.M. Sept. 16, 2024)). A bag containing approximately 16,300 pills was thrown from King's vehicle. Doc. 24 at 2. In May 2025, the Government charged King "with unlawful possession with intent to distribute 400 grams and more of a mixture and substance containing Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi)." Doc. 22 at 1. A conviction under this law comes with a mandatory minimum sentence of ten years and a maximum term of life. § 841(b)(1)(A)(vi). A key inquiry at King's trial will be whether the pills contained fentanyl. Doc. 22 at 9; Doc. 2. To prove that they did, the government intends to "introduce expert testimony of Department of Homeland Security (HSI) Drug Analyst Brittany Crawford[,]" who "tested the suspected fentanyl recovered by HSI agents in connection with [King's] arrest" and intends to explain how the "[s]ubsampling of tablets . . . tested positive for fentanyl." Doc. 29 at 1-2. To challenge that testimony, King will need his own expert forensic chemist. Doc. 22 at 1. But since July 3, 2025, the federal government has

1

failed to fund Criminal Justice Act ("CJA") defender services,[1] leaving King without the requisite means to hire and pay an expert. *Id.* at 2-3, 8-10. This, King states, prevents him from "mount[ing] a meaningful defense[,]" violating his Sixth Amendment "right to a fair trial, including his right to effective representation and access to the basic tools" needed. *Id.* at 11, 13.

Consequently, King moves to dismiss the indictment or alternatively suppress the drug lab evidence. Doc. 22 at 16. The Government argues that dismissal and suppression are too extreme, that "[i]n the event [King] makes a showing that he is entitled to some kind of relief," the Court should consider a more "appropriate remedy[,]" such as "a trial continuance until the next fiscal year's funds become available[,] . . . ."an appropriate jury instruction[,]" or allowing King to "seek funding for the sentencing stage of the criminal case." Doc. 24 at 7-8. If continuing the trial, King asserts, "any resulting delay should be counted against the prosecution for speedy trial purposes." Doc. 22 at 12. Dismissal and suppression are currently inappropriate. The Court denies King's motion and sua sponte orders an ends-of-justice continuance.[2] Doc. 22; 18 U.S.C. § 3161(h)(7).

## DISCUSSION

**I.    Dismissal and Suppression**

Dismissing an indictment is extreme. *United States v. Orozco*, 916 F.3d 919, 925 (10th Cir. 2019). *Orozco* directs the Court to provide a "less drastic" solution. *Id.* There, defendant Orozco "was convicted by a jury of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine . . . and possession with intent to distribute five grams or more of

---

[1] King also argues that this lack of funding "may introduce doubts about counsel's financial tolerance and ability/willingness to defend his case[,]" as "CJA payments [to his attorney] are not expected for months and counsel has bills to pay now." *Id.* at 14. The main issue, however, is King's inability to hire a relevant expert.

[2] This ends-of-justice continuance tolls the Speedy Trial Act's ("STA") clock. At some point in the future, however, the Court might decline to toll the time.

methamphetamine . . . ." *Id.* at 920 (citations omitted). At trial, "Felix Leal and Jose Alejandro Ruiz testified that they gave or sold methamphetamine to Mr. Orozco for resale on numerous occasions." *Id.* at 921. Additionally, "Ruiz [] testified that he sold Mr. Orozco a chameleon-colored Chevrolet Camaro unrelated to narcotics transactions." *Id.* Orozco intended to call Ruiz's brother, Ruiz-Salazar, "to testify that he, not his brother, was friends with and sold the Camaro to Mr. Orozco." *Id.* But "Ruiz-Salazar had been indicted in a federal drug case in the Western District of Missouri (WDMO)" and chose not to testify after the government suggested that his testimony could hurt his WDMO case. *Id.* at 921-23. Responding, Orozco moved for a new trial. *Id.* at 922. "[F]inding that [the government's statements] . . . 'went far beyond a simple perjury warning[,]'" the district court granted the motion, "vacated Mr. Orozco's convictions[,] and dismissed the underlying counts in the superseding indictment with prejudice." *Id.* at 923-24 (quoting *United States v. Orozco*, 291 F. Supp. 3d 1267, 1278 (D. Kan. 2017)). The Tenth Circuit held "that the district court abused its discretion in dismissing the" indictment, finding that a narrowly tailored remedy—such as "delay[ing] Mr. Orozco's trial [for two months] until after Mr. Ruiz-Salazar was sentenced in his WDMO case"—would have better balanced competing interests. *Id.* at 925.

Relatedly, the current circumstances do not warrant the Court suppressing the drug lab evidence. The Government asserts that suppression "is an extreme remedy to be applied in extraordinary circumstances." Doc. 24 at 8. But to support that proposition, the Government cites *United States v. Webster*, 809 F.3d 1158 (10th Cir. 2016). That is a Fourth Amendment case specifically involving blanket suppression. *Id.* at 1164-68. Here, the Government did not secure any evidence by wrongful means, rendering inapposite those cases dealing with whether a court should suppress such evidence. *Cf. id.* at 1165 ("The ordinary remedy for a search conducted or items seized in violation of the Fourth Amendment's warrant requirement is suppression." (internal

3

quotation marks omitted) (quoting *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006))); *United States v. Morrison*, 449 U.S. 361, 365 (1981) ("[W]hen . . . the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the [typical] remedy imposed is not [dismissal] but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted."); *United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000) ("Misconduct by law enforcement officials in collecting incriminating evidence may rise to the level of a due process violation when the misconduct is outrageous enough to shock the conscience of the court."). Indeed, the instant matter better resembles an issue presented in *United States v. Peveto*, 881 F.2d 844 (10th Cir. 1989). There, "[t]he government failed to provide important evidence until the day of trial, in clear violation of discovery orders." *Id.* at 861. And "[a]s a sanction, the [district] court granted a two week continuance." *Id.* Defendant argued on appeal that the court should have dismissed the indictment or excluded the evidence. *Id.* The Tenth Circuit concluded that the district court did not err by refusing to dismiss or suppress and instead "order[ing] the less extreme sanction of continuance." *Id.* at 863. Similarly here,[3] an ends-of-justice continuance is a more measured remedy.

## II.     Ends-of-Justice Continuance

The STA allows the Court to sua sponte order a continuance and exclude days from relevant time computations if it finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. §

---

[3] The *Peveto* issue centered around whether the government should be sanctioned for not complying with a discovery order, containing legal tests separate from those present here. *See* 881 F.2d at 861-63. But the situation is similar: The Government has created a problem, the defendant wants dismissal or suppression, and the Court can cure any prejudice by granting a continuance.

3161(h)(7)(A). To do so, the Court considers at least four factors.[4] *See id.* § 3161(h)(7)(B). The first and the fourth apply here, which concern (i) whether the proceeding would be impossible or a miscarriage of justice would occur in the absence of a continuance and (iv) whether King's counsel would be denied reasonable time necessary to prepare for trial. *See id.*

These factors sometimes overlap. For example, a district court in the Tenth Circuit recently granted an ends-of-justice continuance to allow the government to review its recent ruling granting defendant's motion to suppress evidence. *United States v. Barnes*, Case No. 24-cr-145, 2025 U.S. Dist. LEXIS 130685, at *5-7 (D. Wyo. June 26, 2025). The court reasoned that "the government requires additional time to evaluate the Court's ruling and determine how to proceed moving forward[,]" and "not granting an end of justice continuance is likely to result in a miscarriage of justice by depriving the government and the Defendant of sufficient time to review and evaluate the Court's ruling." *Id.* at *7. Analogously, King, through no fault of his own, requires additional

---

[4] Any one of these can be dispositive. They specifically include:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such a proceeding impossible, or result in a miscarriage of justice. (ii) Whether the case is so unusual or so complex, due to the number of the defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section. (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b) or because the facts upon which the grand jury must base its determination are unusual or complex. (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

§ 3161(h)(7)(B).

time to obtain funding to employ an expert,[5] and if such a continuance is not granted, he will be unable to utilize the necessary[6] tools. Avoiding that result justifies delaying the trial.

## CONCLUSION

Criminal defendants and society are interested in ensuring that the former have effective assistance of counsel and access to a fair trial. *Morrison*, 449 U.S. at 364. Simultaneously, society wants "the administration of criminal justice." *Id.* The Court must consider these competing interests and unnecessarily infringe on neither. *Id.* That directive, 18 U.S.C. § 3161(h)(7)(B)(i) and (iv), and Tenth Circuit case law support granting an ends-of-justice continuance. The time from this order's issuance to the beginning of jury selection shall be excluded for STA purposes. The pretrial conference is reset for January 8, 2026 at 1:30 PM, and the trial is reset for January 12, 2026 at 9:00 AM before Judge Matthew L. Garcia at the United States Courthouse, 333 Lomas Blvd. N.W., Cimarron Courtroom, 5th floor in Albuquerque, New Mexico. Counsel shall adhere to the Court's instructions and case management deadlines as set forth in the following attachment, "Pretrial Deadlines and Procedures for Criminal Cases Before the Honorable Matthew L. Garcia."

It is so ordered.

                UNITED STATES DISTRICT JUDGE
                MATTHEW L. GARCIA

---

[5] As of October 16, 2025, the federal government was shut down and CJA-funding shortcomings had not been resolved. That said, the Court is confident that the shutdown will eventually end and the necessary funds will become available, thereby remedying the underlying problem.

[6] Whether the pills contain fentanyl is a crucial question, and King adequately explains how the mathematical and scientific processes involved in the pills' testing require an expert. Doc. 31 at 8-9; Doc. 22-5 at 1. This expert is reasonable and necessary. 18 U.S.C. § 3006A(e)(1) (permitting a court to authorize funding for an expert witness upon finding "that the services are necessary and that the person is financially unable to obtain them . . . ").